UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:17-CR-00012-25-JRG ) |
| JAMES ALLEN MULLINS, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Emergency Motion for Compassionate Release [Doc. 1116], Amended Emergency Motion for Compassionate Release [Doc. 1120], and Second Amended Emergency Motion for Compassionate Release [Doc. 1122]; the United States' Response in Opposition [Doc. 1124], and Defendant's Reply [Doc. 1127]. For the reasons herein, Defendant's motion is **DENIED**.

### I. BACKGROUND

In 2017, Defendant pleaded guilty to conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). [Plea Agreement, Doc. 436.] Normally, those offenses would require an aggregate sentence of 180 months' imprisonment, but in response to the United States' motion for downward departure under USSG § 5K1.1, this Court sentenced Defendant to 135 months' imprisonment. [Statement of Reasons, Doc. 812 at 2.]

In June 2020, near the beginning of the COVID-19 pandemic in the United States and approximately 41 months into his sentence, Defendant filed an Emergency Motion for

1

Compassionate Release based on his contraction of COVID-19. [Mot. Compassionate Release, Doc. 990 at 3–5.] He argued in his motion that, due to his pre-existing health conditions of obesity with a body mass index over 41 and Type 2 diabetes, he faced a higher risk of complications from COVID-19. [*Id.*] This Court denied his motion on grounds that he failed to demonstrate extraordinary and compelling reasons for a sentence reduction under USSG § 1B1.13 n.1. [Order Den. Compassionate Release, Doc. 1001.] Defendant then appealed this Court's decision. [Notice of Appeal, Doc. 1004.] After this Court's denial of Defendant's motion, the Sixth Circuit, in *United States v. Jones*, held that USSG § 1B1.13 applies only to motions for compassionate release filed by the Bureau of Prisons ("BOP"). 980 F.3d 1098, 1108 (6th Cir. 2020). Thus, the Sixth Circuit vacated and remanded this Court's Order and directed it to exercise its full discretion to determine whether Defendant had demonstrated extraordinary and compelling reasons for compassionate release. [6th Cir. Order, Doc. 1016.] On remand, this Court denied Defendant's motion after considering factors under 18 U.S.C. § 3553(a). [Order Den. Compassionate Release, Doc. 1036.]

Now, Defendant, who is fifty years old and currently housed at FCI Beckley in West Virginia, again asks the Court to grant him compassionate release. BOP, "Find an Inmate," available at https://www.bop.gov/inmateloc/ (last visited Oct. 17, 2022). This time, Defendant asserts that he fears contracting COVID-19 and developing severe complications due to his pre-existing health conditions of diabetes, sleep apnea, high cholesterol, morbid obesity, depression, urinary disorder, high blood pressure/hypertension, and schizophrenia. [Mot. Compassionate Release, Doc. 1116 at 1, 5–6.] Defendant also argues that his release is warranted by multiple family hardships. Specifically, he asserts that he needs to act as a caregiver for his ailing father, who recently underwent a leg amputation [Am. Mot. Compassionate Release, Doc. 1120 at 1–3],

2

and his autistic son, whose mother is experiencing health issues [Second Am. Mot. Compassionate Release, Doc. 1122 at 3].

The United States has responded in opposition to Defendant's motion. [Resp. Opp'n., Doc. 1124.] It argues that he has not satisfied the mandatory exhaustion requirement for his family hardship claims. [*Id.* at 3–4.] As for his COVID-19 claims, it asserts that he has not established any extraordinary and compelling reason for his release and, even if he had, § 3553(a) factors weigh against his release. [*Id.* at 4–7.]

## II. LEGAL STANDARD

"'[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute.'" *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). 18 U.S.C. § 3582(c)(1)(A), gives district courts discretion to grant motions for sentence reductions and compassionate release if: (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction is consistent with applicable Sentencing Commission policy statements, and (3) after considering § 3553(a) factors, the reduction is warranted in whole or in part under the circumstances of the case. *United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (citations omitted). Under the statute, a defendant may move for compassionate release in federal court after they have made such a request with the BOP and fully exhausted all administrative rights to appeal with the prison or waited 30 days after their request to the prison. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). A defendant's failure to exhaust their administrative remedies does not deprive a court of subject-matter jurisdiction. *Id.* at 833. But, § 3582(c)(1)(A)'s exhaustion requirement is a mandatory claims-processing rule that courts must enforce if it is invoked by the United States. *Id.* at 833–36.

3

## III. ANALYSIS

### A. Defendant Has Not Exhausted His Administrative Remedies for His Family Hardship Claims.

On January 10, 2022, Defendant submitted his request for compassionate release to the BOP where he requested that he "be considered for compassionate release due to [his] health problems posing possible threat of death from covid -19." [Mot. Compassionate Release, Doc. 1116 at 14.] Two days later, Defendant submitted a supplemental request where he reiterated his COVID-19 concerns as they relate to his underlying health issues. [Ex. 1 Resp. Opp'n, Doc. 1124-1.] He closed his supplement by stating that if he died from COVID-19 then he "wouldnt be able to raise [his] 11 year old son[.]" [*Id.*]

The United States has invoked § 3582(c)(1)(A)'s exhaustion requirement and argues that Defendant failed to present his family hardship claims to the BOP before raising them in this action. [Resp. Opp'n, Doc. 1124 at 3–4.] In response, Defendant argues that he could not have raised the hardship claim related to his father because "his father had not yet developed or suffered the heart attack or the problems which would on August 1, 2022 cause him to lose his right leg[.]" [Reply Br., Doc. 1127 at 1–2.] As to his claim related to his son, Defendant argues that his "son was mentioned in his [supplemental request for] compassionate release." [*Id.* at 2.] Thus, the question before the Court is whether defendants must submit an issue-specific motion for compassionate release to satisfy the § 3582(c)(A)(1)'s exhaustion requirement. The Court finds that they do.

The Sixth Circuit has not yet considered issue-specific exhaustion and district courts in this Circuit are split on this issue. *Compare United States v. Hughes*, No. 1:16-CR-057, 2022 WL 4084415, at *2 (E.D. Tenn. Sept. 6, 2022) (holding that before filing a motion for compassionate release, a defendant must first "present[] his new compassionate release theories to his warden"),

4

*and United States v. Wiggins*, No. 2:16-cr-20664-1, 2022 WL 806586, at *1 (E.D. Mich. Mar. 15, 2022) ("Defendant[s] must show issue-specific exhaustion[.]"), *with United States v. Ferguson*, 536 F.Supp.3d 139, 142 (E.D. Mich. 2021) ("§ 3582(c)(1)(A) does not require issue exhaustion."), *and United States v. Sherrod*, No. 19-20139, 2021 WL 3473236, at *2 (E.D. Mich. Aug. 6, 2021) ("[I]ssue exhaustion is not required."). The Sixth Circuit's analysis of § 3582(c)(A)(1)'s exhaustion requirement in *Alam*, however, indicates to this Court that issue-specific exhaustion is required. 960 F.3d at 832–36.

In *Alam*, the defendant, in poor health and fearing the contraction of COVID-19, filed a motion for compassionate release only ten days after making his request with the BOP. *Id.* at 832. On appeal, the Sixth Circuit affirmed the district court's dismissal of his motion for compassionate release and its refusal to create an exception to § 3582(c)(1)(A)'s exhaustion requirement. Regarding the creation of an exception, the Sixth Circuit explained that "'Congress sets the rules' when it comes to statutory exhaustion requirements" and, with the First Step Act, it has not given the judiciary a role to play in exception crafting. *Id.* at 834 (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)). Further, it acknowledged Congress' emphasis on fairness in the compassionate release process and its prioritization of accurate claims processing over fast claims processing. *Id.* at 835. Regarding fairness, the Court explained that exceptions to the exhaustion requirement would make the compassionate release process unfair because it would allow anyone asserting irreparable harm to "jump the line." *Id.* Regarding Congress' prioritization of accuracy over speed, it stated that:

> Preventing prisoners from charging straight to federal court serves important purposes. It ensures that the prison administrators can prioritize the most urgent claims. And it ensures that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist. These are not interests we should lightly dismiss or re-prioritize.

5

*Id.*

Issue-specific exhaustion does not implicate fairness concerns; at least not directly. Here, Defendant made his request for compassionate release with the BOP and waited the requisite amount of time to bring this action. In short, he held his spot in line.

Congress' prioritization of accuracy over speed, however, is implicated. Defendant did not present his father's condition to the BOP in his request for compassionate release or his supplement. And, although his supplemental request mentions his son, it is related to Defendant's general desire to one day raise him, not, as he now alleges, the need to act as caregiver due to the child's mother's alleged health issues. [Ex. 1 Resp. Opp'n, Doc. 1124-1.]

The compassionate release process established by Congress makes the BOP the initial arbiter of defendants' claims for compassionate release and, here, the BOP has been deprived of the opportunity to investigate the gravity of Defendant's family hardship claims and evaluate the likelihood that those hardships will persist. This court does not have the power to circumvent the statutorily mandated process by considering those claims now. Accordingly, Defendant's compassionate release claims based on family hardships are **DENIED WITHOUT PREJUDICE**.

Because the Court believes that Defendant is likely to renew his family hardship claims in the future, it will offer a word of caution. The Court is unlikely to grant a motion for compassionate release based on family hardships absent substantive evidentiary proof that Defendant is the only person capable of caring for his father and son. *See United States v. Dotson*, No. 2:13-CR-00033-JRG-DHI, 2020 WL 6294921, at *3–5 (E.D. Tenn. Oct. 27, 2020) (denying compassionate release based on family hardships where defendant failed to offer evidentiary support of sole caregiver status).

**B. Fear of COVID-19 is Not an Extraordinary and Compelling Reason Warranting a Sentence Reduction.**

Having disposed of Defendant's family hardship claims, his only remaining claim is for compassionate release based on fears of contracting COVID-19 and developing severe complications due to his pre-existing health conditions. [Mot. Compassionate Release, Doc. 1116 at 1, 5–6, 11.] In support of this claim, Defendant points out that when this Court denied his first motion for compassionate release in February 2021, it suggested that his pre-existing conditions coupled with COVID-19 *could* be an extraordinary and compelling reason for his release. [Mot. Compassionate Release, Doc. 1116, at 3 (referencing Or. Den. Compassionate Release, Doc. 1036).]

The law of this Circuit has changed since that Order. The Sixth Circuit has held as a matter of law that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) (citing *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)). The only potential exception is where a defendant "is unable to receive or benefit from a vaccine." *Id*. (citations omitted).

Defendant has been fully vaccinated from COVID-19. [Medical R., Sealed Doc. 1125 at 126, 163, 165.] Therefore, he "largely faces the same risk from COVID-19 as those who are not incarcerated. *Lemons*, 15 F.4th at 751. Although his medical records indicate that he refused a booster vaccine, that fact does not help his cause because the record is devoid of any compelling reason justifying his refusal. [Medical R., Sealed Doc. 1125 at 126, 163, 165.] And, while the Court will not speculate as to his reason for refusing a booster, considering that he has already received two shots that, as far as the Court can tell, were effective and resulted in no serious side effects, Defendant would be hard pressed to convince the Court that there is a compelling reason

7

for his not receiving a booster vaccine. Not to mention, before he was vaccinated, Defendant contracted and recovered from COVID-19 without becoming seriously ill. [Order Den. Compassionate Release, Doc. 1001, at 3–4.] Moreover, currently, FCI Beckley is reporting no active cases of COVID-19 among inmates or staff. BOP, "COVID-19 Cases," available at https://www.bop.gov/coronavirus/;jsessionid=1C6493C2146D11D6F10AA0C3CAE0AE18 (last visited Oct. 17, 2022). Accordingly, Defendant's compassionate release claim based on COVID-19 is **DENIED WITH PREJUDICE**.

So ordered.

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE